UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JEROME MENDELL HAILEY,

        Plaintiff,

v.

LARRY CIEPLY et al.,

        Defendants.
_____/

Case No. 1:20-cv-1248

Honorable Paul L. Maloney

## **OPINION**

        This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983 and the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101–12213. Under Rule 21 of the Federal Rules of Civil Procedure, a court at any time, with or without motion, either may add or drop a party for misjoinder or nonjoinder or may sever claims against a party into a new action. Fed. R. Civ. P. 21. Additionally, under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will drop Defendants Stewart, Yokom, Reed, and Daughtery under Rule 21 because they are misjoined. The Court will further sever Plaintiff's claims against Defendants Davis, Holmes, and McConnell into a new action. The Court will also

dismiss, for failure to state a claim, Plaintiff's Eighth Amendment, Fourteenth Amendment, and ADA claims against the remaining Defendants. Additionally, the Court will deny Plaintiff's pending motion for a preliminary injunction. (ECF No. 5.)

## Discussion

**I.     Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Gus Harrison Correctional Facility (ARF) in Adrian, Lenawee County, Michigan. The events about which he complains occurred at that facility and at the Richard A. Handlon Correctional Facility (MTU) in Ionia, Ionia County, Michigan. Plaintiff sues the following MTU employees: Unit Chief Larry Cieply; Psychologist Unknown Williams; Deputy Warden Unknown Yokom; Lieutenant Unknown Stewart; Resident Unit Manager Unknown Daughtery; and Prisoner Counselor Unknown Reed. Plaintiff further sues the following ARF employees: Unit Chief Unknown Holmes; Psychologist or Social Worker Unknown Davis; and Captain Unknown McConnell.

Plaintiff alleges that he has several issues that affect his mental health. On October 15, 2020, he transferred to MTU. When Plaintiff arrived, Defendant Williams allegedly told him that he would be sent to administrative segregation because he had filed complaints and grievances on MTU staff three years earlier while incarcerated there. Plaintiff alleges that Defendant Williams further directed a corrections officer to take Plaintiff to administrative segregation and explained that Defendant Cieply had ordered the placement "to protect the staff and prisoners from [Plaintiff]." (Compl., ECF No. 1, PageID.5.) On October 16, 2020, psychologist Chattah (not a defendant) allegedly apologized to Plaintiff and provided further information. Psychologist Chattah allegedly told Plaintiff, "Defendant Cieply is talking of

2

fabricating a SPON[1] against you. It is likely you're going to a [security] level 4 facility." (*Id.*) Several days later, Defendant Reed allegedly told Plaintiff and Defendant Yokom that Defendant Cieply had initiated a SPON. Plaintiff alleges that he had no pending or recent misconduct reports against him at that time.

The remainder of Plaintiff's allegations describe a series of discrete events that occurred during the subsequent two months at MTU and ARF. Plaintiff alleges that Defendants Reed, Steward, and Yokom kept Plaintiff from his personal property and fresh clothes. Defendant Daughtery allegedly said that he would get answers for Plaintiff's questions but never did.

On November 12, 2020, MDOC transferred Plaintiff to ARF where he again was placed in administrative segregation, and the remainder of Plaintiff's allegations relate to that facility. Plaintiff alleges that Defendant McConnell deprived Plaintiff of his personal property. Defendant Davis allegedly sexually harassed and retaliated against Plaintiff. Plaintiff also alleges that he sent complaints to Defendant Holmes, but Defendant Holmes never responded.

For relief, Plaintiff seeks compensatory and punitive damages, fees, and costs.

## II. Misjoinder

Plaintiff joins nine Defendants connecting a series of discrete claims at two prisons. At this juncture, the Court reviews whether Plaintiff's claims are misjoined.

### A. Improper Joinder

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2)

---

[1] A "SPON" is a "Special Problem Offender Notice." *See* MDOC Policy Directive (PD) 03.03.110 (eff. Nov. 1, 2018) (defining SPON), https://www.michigan.gov/documents/corrections/03_03_110_637560_7.pdf. MDOC staff may initiate a SPON when, based on "specific reliable information[,] . . . an offender is believed likely to present a genuine threat to the safety of an identified offender, volunteer, or employee . . . or to the order or security of a correctional facility." *Id.*, ¶ D.

3

governs when multiple defendants may be joined in one action: "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party."

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .
>
> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), *and Garcia v. Munoz*, No. 08-1648, 2008 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also United States v. Mississippi*, 380 U.S. 128, 142–43 (1965) (joinder of defendants is permitted by Rule 20 if both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778 (internal quotation omitted). When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "'the time period during which the alleged acts occurred; whether the acts . . . are related; whether more

4

than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations.'" *Id.* (quoting *Nali v. Mich. Dep't of Corr.*, No. 07-10831, 2007 WL 4465247, at *3 (E.D. Mich. Dec. 18, 2007)).

Permitting the improper joinder in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004). Under the PLRA, a prisoner may not commence an action without prepayment of the filing fee in some form. *See* 28 U.S.C. § 1915(b)(1). These "new fee provisions of the PLRA were designed to deter frivolous prisoner litigation . . . 'by making all prisoner [litigants] . . . feel the deterrent effect created by liability for filing fees.'" *Williams v. Roberts*, 116 F.3d 1126, 1127–28 (5th Cir. 1997) (quoting *Jackson v. Stinnett*, 102 F.3d 132, 136–37 (5th Cir. 1996)). The PLRA also contains a "three-strikes" provision requiring the collection of the entire filing fee after the dismissal for frivolousness, etc., of three actions or appeals brought by a prisoner proceeding in forma pauperis, unless the statutory exception is satisfied. 28 U.S.C. § 1915(g). The "three strikes" provision was also an attempt by Congress to curb frivolous prisoner litigation. *See Wilson v. Yaklich*, 148 F.3d 596, 603 (6th Cir. 1998).

The Seventh Circuit has explained that a prisoner like plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .

5

> A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions— should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168–69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three strikes provision of PLRA); *Patton v. Jefferson Corr. Ctr.*, 136 F.3d 458, 464 (5th Cir. 1998) (declining to allow "litigious prisoners to immunize frivolous lawsuits from the 'three strikes' barrier by the simple expedient of pleading unexhausted habeas claims as components of § 1983 suits"); *Shephard v. Edwards*, No. C2-01-563, 2001 WL 1681145, at *1 (S.D. Ohio Aug. 30, 2001) (declining to consolidate prisoner's unrelated various actions so as to allow him to pay one filing fee, because it "would improperly circumvent the express language and clear intent of the 'three strikes' provision"); *Scott v. Kelly*, 107 F. Supp. 2d 706, 711 (E.D. Va. 2000) (denying prisoner's request to add new, unrelated claims to an ongoing civil rights action as an improper attempt to circumvent the PLRA's filing fee requirements and an attempt to escape the possibility of obtaining a "strike" under the "three strikes" rule).

Under these circumstances, to allow Plaintiff to proceed with improperly joined claims and Defendants in a single action would permit him to circumvent the PLRA's filing fee provisions. Furthermore, he would avoid the consequences of filing at least three actions with all claims dismissed as meritless, frivolous, or for failure to state a claim.

Therefore, the Court will look to the first listed Defendant and the first set of clear factual allegations to determine which portion of the action should be considered related. Plaintiff lists Defendant Cieply first in the complaint's caption (*id.*, PageID.1) and in the list of Defendants (*id.*, PageID.3). Plaintiff's earliest factual allegations assert that Defendants Cieply and Williams

6

directed that Plaintiff be placed in administrative segregation. The earliest allegations further assert that Defendant Cieply intended to initiate a SPON on Plaintiff. Plaintiff's only allegations involving Defendant Cieply relate to his placement in administrative segregation and the initiation of a SPON. As a result, none of the Defendants other than Defendant Williams is transactionally related to Plaintiff's earliest allegations involving Defendant Cieply. Moreover, it is clear that no question of law or fact is common to all Defendants. *See* Fed. R. Civ. P. 20(a)(2)(B). Plaintiff has, therefore, improperly joined Defendants Stewart, Yokom, Reed, Daughtery, Davis, Holmes, and McConnell.

**B.    Remedy**

Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." *Id.* Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572–73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'") (quoting *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989)); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *Carney v. Treadeau*, No. 2:07-cv-83, 2008 WL 485204, at *2 (W.D. Mich. Feb. 19, 2008); *Coal. to Defend Affirmative Action v. Regents of Univ. of Mich.*, 539 F. Supp. 2d 924, 940 (E.D. Mich. 2008); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846–47.

In this case, Plaintiff brings a civil rights action under 42 U.S.C. § 1983 and the ADA. For civil rights suits filed in Michigan, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(2); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996).

Plaintiff's misjoined claims involve conduct that has occurred since October 2020, well within the three-year period of limitations. Those claims are not at risk of being time-barred. Accordingly, the Court will exercise its discretion under Rule 21 and drop Plaintiff's claims against Defendants Stewart, Yokom, Reed, and Daughtery under Rule 21 because they are misjoined.[2] Plaintiff has also alleged claims against three Defendants at ARF—Defendants Davis, Holmes, and McConnell—which is in the Eastern District of Michigan. The Court will sever Plaintiff's claims against Defendants Davis, Holmes, and McConnell into a new action.

---

[2] Should Plaintiff elect to file a new action against one or more of the dropped Defendants, he is cautioned that he must limit such future actions to defendants and claims that are transactionally related to one another. The Court may, in its discretion and without further warning, dismiss any future complaint, or part thereof, filed by Plaintiff that contains claims that are misjoined.

## III. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

9

identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

IV. **First Amendment**

Plaintiff alleges that Defendants Cieply and Williams placed him in administrative segregation in retaliation for filing grievances and complaints.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

On initial review, the Court concludes that Plaintiff has alleged facts sufficient to state a First Amendment retaliation claim against Defendants Cieply and Williams.

V. **Eighth Amendment**

Plaintiff alleges that Defendants Cieply and Williams violated his Eighth Amendment rights, presumably because they purportedly directed Plaintiff's placement into administrative segregation.

The Eighth Amendment prohibits punishments that are not only physically barbaric, but also those which are incompatible with "the evolving standards of decency that mark the progress of a maturing society," or which "involve the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102–03 (1976) (internal quotations omitted). To establish

an Eighth Amendment claim, the prisoner must show that he was deprived of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Conditions that are restrictive or even harsh, but are not cruel and unusual under contemporary standards, are not unconstitutional. *Id.* Thus, federal courts may not intervene to remedy conditions that are merely unpleasant or undesirable.

Placement in segregation is a routine discomfort that is "'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). Although it is clear that Plaintiff is denied certain privileges as a result of his administrative segregation, he does not allege or show that he is being denied basic human needs and requirements. The Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges as a result of administrative segregation cannot establish an Eighth Amendment violation. *See Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008). Moreover, Plaintiff cannot bring an Eighth Amendment claim for emotional or mental damages because he does not allege a physical injury. *See* 42 U.S.C. §1997e(e); *see also Hudson*, 503 U.S. at 5; *Harden-Bey*, 524 F.3d at 795. As a result, Plaintiff fails to state an Eighth Amendment claim against Defendants Cieply and Williams for his placement in administrative segregation.

Furthermore, to the extent Plaintiff implies that Defendants violated the Eighth Amendment because Plaintiff allegedly suffers from mental health problems, he again fails to state a claim. Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under

§ 1983." *Estelle*, 429 U.S. at 104–05. Plaintiff does not allege that Defendants Cieply and Williams delayed or denied him any mental health care. Consequently, he fails to state an Eighth Amendment claim.

## VI.     Fourteenth Amendment

Plaintiff also alleges that Defendants Cieply and Williams violated the Fourteenth Amendment, but he fails to specify which provision. Presumably, Plaintiff intends to allege that, without due process, Defendants either deprived him of his personal property or placed him in administrative segregation.

### A.     Personal Property

Plaintiff alleges that he was separated from his personal property while he was placed in administrative segregation, which he contends violated his due process rights.

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis (Bazzetta II)*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claims involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *K'y Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

Courts routinely have recognized such restrictions and have concluded that prisoners do not have a constitutional right to maintain an unlimited amount of property in their cells. *See Friend v. Chapleau*, No. 95-5628, 1995 WL 607835, at *2 (6th Cir. Oct. 13, 1995) (holding that the defendant did not have a constitutional right to possess unlimited amounts of legal property); *see also Smith v. Ortiz*, No. 05-1211, 2006 WL 620871, at *2 (10th Cir. Mar. 14,

2006) (recognizing the distinction between the right to own property and the right to possess it while in prison and holding that, when a prisoner was allowed to send his property to another location, he was not deprived of property); *Cosco v. Uphoff*, 195 F.3d 1221, 1224 (10th Cir. 1999) ("The regulation of type and quantity of individual possession in cells is typical of the kinds of prison conditions that the Court has declared to be subject to the . . . analysis set forth in *Sandin*."); *see also Hinds v. Lewis*, No. 1:19-cv-279, 2019 WL 2223253, at *5 (W.D. Mich. May 23, 2019) (recognizing that a prisoner has no right to possess unlimited property in his cell); *Blanton v. Caruso*, No. 1:10-cv-1187, 2011 WL 202094, at *3 (W.D. Mich. Jan. 19, 2011) (limitation on in-cell property is not atypical and significant).

Because Plaintiff has no property interest in keeping his unspecified personal property in his cell, Defendants have not deprived him of his personal property without due process. He therefore fails to state a due process claim for the deprivation of his personal property.

### B. Administrative Segregation

Generally, courts will consider the nature and duration of a stay in segregation in determining whether it imposes an "atypical and significant hardship." *Harden-Bey*, 524 F.3d at 793. In *Sandin*, the Supreme Court concluded that disciplinary segregation for thirty days "did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." 515 U.S. at 486. Likewise, the Sixth Circuit has often held that administrative segregation alone does not involve an "atypical and significant" hardship implicating a protected liberty interest. *See e.g., Jones v. Baker*, 155 F.3d 810, 812–13 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995) (holding a Michigan prisoner's complaint about his placement in administrative segregation without a hearing did not rise to the level of an "atypical and significant hardship"). The Sixth Circuit has held that a prisoner may present a § 1983 claim alleging that placement in administrative segregation is "atypical and significant in relation to the

13

ordinary incidents of prison life" only in extreme circumstances. *See Harden-Bey*, 524 F.3d at 795. Plaintiff has not alleged facts showing an atypical and significant hardship. Consequently, the court concludes that no liberty interest is implicated by his placement. Therefore, he fails to state a Fourteenth Amendment claim.

## VII. Americans with Disabilities Act (ADA)

Plaintiff claims that Defendants violated the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101–12213. Presumably, Plaintiff intends to allege that Defendants specifically violated Title II of the ADA, 42 U.S.C. §§ 12131–12165, which applies to public entities.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Therefore, to state a claim under the ADA, a plaintiff must show that he is a "qualified person," that he has a "disability," and that he has been denied a "service, program, or activity" of the state or subjected to discrimination. In the ADA, the term "disability" is defined as follows: "[1] a physical or mental impairment that substantially limits one or more of the major life activities of such individual; [2] a record of such an impairment; or [3] being regarded as having such an impairment . . . ." 42 U.S.C. § 12102(2).

Plaintiff does not clearly identify his alleged disability, but he asks that the Court stop "discriminatory practices against [the] mentally ill . . . within [the] MDOC." (Compl., ECF No. 1, PageID.13.) He later identifies that he has major depression and anti-personality disorder. However, even if the Court were to accept that Plaintiff's history of major depression and anti-personality disorder fall within the definition of "disability," Plaintiff has not alleged what "service, program, or activity" he is qualified for but has been denied or how he has been subjected

to discrimination. Moreover, because Plaintiff has further failed to allege facts that suggest any such denial or discrimination was motivated by his disability, he fails to state an ADA claim. *See Clayton v. Mich. Dep't of Corr.*, No. 17-1003, 2017 WL 6804104, at *2 (6th Cir. Aug. 21, 2017).

## VIII. Pending Motion

Also pending before the Court is Plaintiff's motion for a preliminary injunction. (ECF No. 5.) Plaintiff's motion contends that, due to the risks posed by the transmission of COVID-19 in the MDOC, the Court should grant him habeas relief.

The Court will deny Plaintiff's motion for several reasons. First, Plaintiff requests release from custody. That relief is available only in a habeas corpus proceeding. "The Supreme Court has held that release from confinement—the remedy petitioner[] seek[s] here—is 'the heart of habeas corpus.'" *Wilson v. Williams*, 961 F.3d 829, 868 (6th Cir. 2020) (quoting *Preiser v. Rodriguez*, 411 U.S. 478, 498 (1973)).[3] A challenge to the fact or duration of confinement should be brought as a petition for habeas corpus and is not the proper subject of a civil rights action brought pursuant to § 1983. *See Preiser*, 411 U.S. at 484 (the essence of habeas corpus is an attack by a person in custody upon the legality of that custody and the traditional function of the writ is to secure release from illegal custody). Therefore, Plaintiff may not seek habeas relief in this civil rights action.

Moreover, the irreparable injuries described in Plaintiff's motion have, at best, a highly attenuated relationship to his complaint. Plaintiff cannot seek to bring entirely new claims into this action by way of a motion for preliminary injunction, particularly where Defendants have no control over Plaintiff's present confinement. *See Colvin v. Caruso*, 605 F.3d 282, 299–300 (6th

---

[3] The *Wilson* petitioners were federal prison inmates who brought habeas claims under 28 U.S.C. § 2241 similar to those claims brought by Plaintiff in the instant motion.

Cir. 2010). Finally, Plaintiff's transfer to another prison facility mooted his pursuit of injunctive relief against these Defendants. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996).

Thus, for all the reasons stated above, the Court will deny Plaintiff's motion for a preliminary injunction.

## **Conclusion**

Having conducted the review required by Rule 21 of the Federal Rules of Civil Procedure, the Court determines that the Defendants Stewart, Yokom, Reed, Daughtery, Davis, Holmes, and McConnell are misjoined in this action. The Court will dismiss without prejudice Plaintiff's complaint against Defendants Stewart, Yokom, Reed, and Daughtery under Rule 21. The Court will further order that Plaintiff's claims against Defendants Davis, Holmes, and McConnell be severed into a new action. Having also conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's Eighth, Fourteenth, and ADA claims will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also deny Plaintiff's pending motion for a preliminary injunction. (ECF No. 5.) Plaintiff's First Amendment retaliation claims against Defendants Cieply and Williams remain in the case.

An order consistent with this opinion will be entered.

Dated: July 14, 2021  /s/ Paul L. Maloney
Paul L. Maloney
United States District Judge